# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | § | |
|---|---|---|
| BARZ ADVENTURES INC. d/b/a BAR-Z MOBILE DEVELOPMENT, | § § § | |
| *Plaintiff,* | § § | |
| | § | Civil Action No. 4:20-CV-299 |
| v. | § | Judge Mazzant |
| | § | |
| TIMOTHY PATRICK, APP STAR, LLC, and EUGENE RICE | § § § | |
| | § | |
| *Defendants.* | § | |

## MEMORANDUM OPINION AND ORDER AND FINDINGS OF FACT AND CONCLUSIONS OF LAW

This case arises out of a former employer-employee relationship whereby Defendant Timothy Patrick ("Patrick") used to work for Plaintiff BarZ Adventures Inc. d/b/a Bar-Z Mobile Development ("Bar-Z"). After being released from Bar-Z, Patrick went to work for Defendant App Star, LLC ("App Star") and directly competed with Bar-Z, despite signing an employment agreement stating that he would refrain from such conduct.

At this point in the proceedings, the Court has dismissed some of the original defendants with prejudice (Dkt. #103), granted default judgment against a defendant (Dkt. #146), and granted summary judgment in favor of Bar-Z against the remaining defendants on all pending claims (Dkt. #161).[1] Additionally, the Court has conducted two bench trials in the above-styled matter. This Order concerns the Court's findings from both bench trials, but as a preliminary matter, the Court will first explain the necessary background.

---

[1] Since the Court has dismissed all claims against Defendants Colleyville Chamber of Commerce, Princeton Chamber of Commerce, and Greater Celina Chamber of Commerce based on a voluntary dismissal, the current Order will only concern defendants that still have issues to be resolved (Dkt. #103). The defendants which meet that criteria are as follows: Timothy Patrick, App Star, LLC, and Eugene Rice.

On June 1, 2021, Bar-Z filed its Fifth Amended Complaint against Patrick, App Star, and App Star's CEO, Defendant Eugene Rice ("Rice") (Dkt. #120).  None of the defendants responded.

Rice, having been duly cited, not only failed to respond to the Fifth Amended Complaint, but never responded to any of Bar-Z's filings.  On March 10, 2022, Bar-Z filed Plaintiff's Motion for Entry of Default Judgment against Rice (Dkt. #141).  Again, Rice failed to respond.  On September 6, 2022, the Court entered a Memorandum Opinion and Order granting the Motion for Entry of Default Judgment in part, as it still needed to conduct a hearing on damages (the "September 6 Order") (Dkt. #146).  On October 12, 2022, the Court heard testimony and admitted exhibits in support of the damages award against Rice.  While Bar-Z appeared at the hearing, Rice did not.  At the end of the hearing, the Court did not officially rule on the damages portion of the default judgment.

On March 10, 2022, Bar-Z filed Plaintiff's Motion for Summary Judgment against Patrick and App Star (Dkt. #143).  Patrick and App Star failed to respond.  However, unlike Rice, Patrick and App Star had responded to previous filings, therefore, a default judgment was not appropriate. On March 13, 2023, the Court issued its Memorandum Opinion and Order on the summary judgment motion (the "March 13 Order") (Dkt. #161).  The Court granted summary judgment in favor of Bar-Z on all its claims, limiting the tortious interference claim against App Star to the extent it does not relate to Bar-Z's exclusive right of its trade secrets.  The Court also dismissed all of Patrick's and App Star's counterclaims against Bar-Z with prejudice.  At the end of the March 13 Order, the Court noted that it would "enter an order regarding the damages owed consistent with the rulings made in this Order" (Dkt. #161 at p. 38).

On March 13, 2023, the Court held a bench trial on all pending matters.  None of the defendants appeared.  The Court admitted Bar-Z's exhibits and heard testimony on attorneys' fees.

2

**FINDINGS OF FACT**

Having reviewed both motions, the exhibits and evidence presented, and all other matters properly before the Court, the Court now makes the following facts and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a).[2] To the extent that any of the findings of fact constitute conclusions of law, or any of the conclusions of law constitute findings of fact, they are adopted as such. The Court is of the opinion that Bar-Z has shown that the following facts as true:

1. The Court fully incorporates the factual findings in its September 6 Order and March 13 Order (Dkt. #146; Dkt. #161).

2. On April 3, 2017, Patrick entered an Employment, Confidential Information and Invention Assignment Agreement ("Employment Agreement") with Bar-Z. This Employment Agreement defined "Confidential Information" to include any Company proprietary information, technical data, trade secrets or know-how, including, but not limited to, research, product plans, products, services, customer lists and customers, markets, software, developments, inventions, processes, formulas, technology, designs, engineering, hardware configuration information, marketing, finances and other business information disclosed to Patrick directly or indirectly ("Confidential Information").

---

[2] In preparing this order, the Court carefully considered the entire record, including the pretrial filings, trial testimony, and trial exhibits, and subsequently applied the Fifth Circuit standard for findings and conclusions under Federal Rule of Civil Procedure 52. *See Eni US Operating Co., Inc. v. Transocean Offshore Deepwater Drilling, Inc*., 919 F.3d 931, 935–36 (5th Cir. 2019); *see also* 9C CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE § 2579 (3d ed.). Since the "findings of fact and conclusions of law must be 'sufficient in detail and exactness to indicate the factual basis for the ultimate conclusion reached,'" *Rivera v. Kirby Offshore Marine, L.L.C.*, 983 F.3d 811, 819 (5th Cir. 2020) (quoting *Lettsome v. United States*, 434 F.2d 907, 909 (5th Cir. 1970)), the Court "need only make brief, definite, pertinent findings and conclusions upon the contested matters." FED. R. CIV. P. 52(a), advisory committee's note to 1946 amendment. This standard does not require the Court to "expressly respond like a debate champion to every evidentiary or factual contention made by the losing side." *Richard v. Reg'l Sch. Unit 57*, 901 F.3d 52, 59 (1st Cir. 2018); *see Century Marine Inc. v. United States*, 153 F.3d 225, 231 (5th Cir. 1998) (collecting cases).

3. The Employment Agreement also included an agreement not to compete with Bar-Z for twelve (12) months following his termination of employment with the company.

4. In September 2018, Bar-Z terminated Patrick for cause.

5. Patrick signed a Termination Certification, which acknowledged his termination as well as the provisions from his Employment Agreement that placed a duty on Patrick to not compete and not disclose Bar-Z's Confidential Information once he left.

6. Soon after his termination, Patrick breached his Employment Agreement by directly competing with Bar-Z and using Bar-Z's Confidential Information to the detriment of Bar-Z. This included App Star's development of mobile applications for Princeton Chamber of Commerce, Colleyville Chamber of Commerce, and Greater Celina Chamber of Commerce (collectively, the "Chamber Apps").

7. Patrick directly competed with Bar-Z during the twelve-month period that Patrick agreed not to compete with Bar-Z. Due to the unique market, Bar-Z would have been the only vendor to provide the Chamber Apps if App Star had not got involved.

8. App Star derived a profit from the Chamber Apps. Additionally, App Star benefitted from utilizing Bar-Z's Confidential Information because it did not have to spend the various time and expenses that Bar-Z spent to create the framework for the Chamber Apps (Dkt. #164, Exhibit 3 at pp. 176–81).

9. The minimum length of a Bar-Z contract dealing with chamber applications is four years.

10. In the Fifth Amended Complaint, Bar-Z listed Rice as a named defendant. To date, Rice has not responded to a filing in the above-styled matter, despite receiving the requisite notice.

11. Four attorneys worked on this case representing Bar-Z. Dan Bitting and Cindy Saiter of Scott Douglass & McConnico LLP, as well as Clyde Siebman and Anna Skupin for Siebman Forrest Burg & Smith, LLP (Dkt. #164, Exhibit 4 at p. 6).

12. App Star, Rice, and Patrick created applications that were almost identical to the ones that Bar-Z created *See* (Dkt. #164, Exhibit 3 at pp. 183–91). In fact, in the App Star application that was created for Princeton Chamber of Commerce, there is a button that users may select that accidently states "City of Granbury" and the "Grangbury [sic] Chamber of Commerce," which is a Bar-Z client (Dkt. #164, Exhibit 3 at p. 186). The applications looked almost identical because the defendants pushed for the applications "to duplicate the features" of Bar-Z's applications (Dkt. #164, Exhibit 4 at pp. 1–5). When the initial prototypes looked different—and not enough like Bar-Z's applications— defendants were angry with the developers because they were supposed to be building "a copy of the other app" (Dkt. #164, Exhibit 4 at pp. 1–5).

13. Bar-Z's CEO reached out to both Patrick and Rice regarding their conduct that violated Patrick's Employment Agreement. Patrick responded saying "Yeah, I know. What are you going to do about it?" Rice responded saying "yeah, well, what are you going to do about it?" (Dkt. #164, Exhibit 1 at p. 6). Both Patrick and Rice knew that their conduct was in violation of Patrick's Employment Agreement, yet they still acted together to create the Chamber Apps.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction over the parties and claims herein.

2. The Court fully incorporates the legal conclusions in its September 6 Order and March 13 Order (Dkt. #146; Dkt. #161).

3. Patrick, Rice, and App Star knowingly, willfully, and maliciously developed, marketed, delivered, and sold advertising for the Chamber Apps in violation of Patrick's non-compete and by using Bar-Z's Confidential Information.

4. In addition, Patrick, Rice, and App Star knowingly, willfully, and maliciously downloaded Bar-Z's applications from the Apple App Store to copy, reverse-engineer, and create derivative works from Bar-Z's applications in violation of Bar-Z's and Apple's license agreements.

5. Bar-Z's source code, unique user interface for its applications, content management software database ("CMS"), and application programming interface ("API"), as well as the confidential and proprietary methods by which the CMS communicates with the app through the API all constitute "trade secrets" within the meaning of the Texas Uniform Trade Secrets Act ("TUTSA") and the Federal Defend Trade Secrets Act ("FDTSA"). TEX. CIV. PRAC. & REM. CODE §§ 134A.001, *et seq*.; 18 U.S.C. §§ 1832, 1836(B)(3). In addition, Bar-Z's trade secrets include its "Go to Market" strategy, which includes its "Sales Playbook," pricing information, and marketing materials. These trade secrets are generally unknown information that Bar-Z has invested considerable time and effort developing, has employed reasonable efforts to protect and keep secret, and has independent economic value to competitors such as App Star. Moreover, these trade secrets are not readily ascertainable by proper means.

6. The evidence is sufficient to establish that App Star, Rice, and Patrick acquired some of Bar-Z's trade secrets in violation of the TUTSA and the FDTSA. In addition, App Star, Rice, and Patrick used and disclosed Bar-Z's trade secrets in violation of the

TUTSA and FDTSA. Tex. Civ. Prac. & Rem. Code §§ 134A.001, *et. seq.*; 18 U.S.C. §§ 1832, 1836(b)(3).

7. App Star, Rice, and Patrick's intentional acquisition and use of Bar-Z's trade secrets was in conscious disregard of Bar-Z's rights, constitute willful and malicious misappropriation and have caused Bar-Z irreparable injury for which there is no adequate remedy at law.

8. By using and disclosing Bar-Z's confidential information, Patrick breached his Employment Agreement with Bar-Z, and Rice and App Star tortiously interfered with that Employment Agreement. The finding that App Star tortiously interfered with that agreement is limited to the extent such interference does not relate to Bar-Z's exclusive right of its trade secrets. In addition, by this conduct Patrick committed a clear and serious breach of his fiduciary duties owed to Bar-Z, and Rice and App Star knowingly participated in that breach.

9. Patrick further breached his Employment Agreement by working with App Star to develop, market and sell a competing application to chambers of commerce in Texas in violation of his twelve-month covenant not to compete. In addition, Patrick's violations of his covenant not to compete were deliberate, continuous, and persistent.

10. Bar-Z is entitled to default judgment against Rice.

11. A "flexible and imaginative" approach is applied to the calculation of damages in trade secret misappropriation cases, meaning there are several ways that it can be measured. *StoneCoat of Texas, LLC v. ProCal Stone Design, LLC*, 426 F. Supp. 3d 311, 347 (E.D. Tex. 2019) (quoting *Univ. Computing Co. v. Lykes-Youngstown Corp.*, 504 F.2d 518, 538 (5th Cir. 1974)); *see also* Tex. Civ. Prac. & Rem. Code 134A.004(a) ("Damages

can include both the actual loss caused by misappropriation and the unjust enrichment caused by misappropriation that is not taken into account in computing actual loss."). While damages need not be established with mathematical precision, "the evidence must provide a basis for reasonable inferences." *Alcatel USA, Inc. v. Cisco Sys., Inc.*, 239 F. Supp. 2d 660, 671 (E.D. Tex. 2002) (quoting *Dyll v. Adams*, 167 F.3d 945, 947 (5th Cir. 1999)). According to the Texas Supreme Court, loss of value to the plaintiff is usually measured by lost profits. *StoneCoat of Texas*, 426 F. Supp. 3d at 348 n.28. To recover lost profits, a party must present facts, figures, or data from which the lost profits can be ascertained. *Id.*

12. Carrie Little presented evidence of how much the Chambers Apps likely generated revenue over the span of four years (Dkt. #164, Exhibit 3 at p. 182). She conducted her calculations based on the number of members each city had and how much comparable markets were making with Bar-Z. The causation element is satisfied because Bar-Z has shown to the Court that there was no other competitor in this market before App Star. This means that if the chambers of commerce wanted an application like the one they received, Bar-Z would have been the only way for them to do that, if not for App Star's misappropriation of Bar-Z's trade secrets. However, Carrie Little also presented evidence regarding how much it would have cost Bar-Z to "develop, market and sell the advertising" for the Chamber Apps. Therefore, the Court will subtract the cost of development from the lost revenue figure to get a more accurate lost profits calculation.

13. The Court finds that the evidence presented provides a valid basis to measure Bar-Z's lost profits (Dkt. #164, Exhibit 47 ¶ 6–10). The violations of TUTSA and FDTSA, the

breaches of contract, and the breaches of fiduciary duty proximately caused Bar-Z to suffer $740,930.65 in actual damages. *See Thomas v. Hughes*, 27 F. 4th 995, 1018 (5th Cir. 2022) (explaining one satisfaction rule to prevent double recovery based on a single injury). The amount comes from $838,637.65 in lost revenue from the Chamber Apps over the span of four years and subtracting $97,707.00 from that figure to cover the cost of development for the Chamber Apps that Bar-Z would have had to pay.

14. Defendants' misappropriations of Bar-Z's trade secrets in violation of TUTSA and FDTSA were willful and malicious. TEX. CIV. PRAC. & REM. CODE § 134A.005(3). Accordingly, the Court will award Bar-Z its reasonable attorney's fees. Bar-Z is also entitled to recover its attorney's fees under TEX. CIV. PRAC. & REM. CODE § 38.001, *et. seq*.

15. In utilizing the lodestar method to calculate reasonable attorneys' fees, the Court finds that the rates submitted to the Court are reasonable. Dan Bitting of Scott Douglass & McConnico LLP charged Bar-Z at a rate of $500 an hour. Cindy Saiter of Scott Douglass & McConnico LLP charged Bar-Z at a rate of $450 an hour. Clyde Siebman of Siebman Forrest Burg & Smith, LLP charged Bar-Z at a rate of $475 an hour, which was a discounted rate than what he normally charged, due to Siebman's belief that local counsel should not be charging more than lead counsel (Dkt. #164, Exhibit 4 at p. 52). Finally, Anna Skupin of Siebman Forrest Burg & Smith, LLP charged Bar-Z at a rate of $350 an hour.

16. The Court also finds that the time records submitted are adequate (Dkt. #164, Exhibit 3 at pp. 1–175). For the Scott Douglass & McConnico attorneys, Dan Bitting worked 546.8 hours for this case and Cindy Saiter worked 506.4 hours for this case. However,

the total amount of fees was discounted, meaning that the client was not charged the full $501.280.00.[3] For the Siebman Forrest Burg & Smith attorneys, Clyde Siebman worked 52.2 hours for this case and Anna Skupin worked 9.3 hours. The Court finds that no hourly exclusions are necessary. Therefore, the hours that were billed and discounted are considered reasonably expended.

17. Finally, the Court sees no circumstances that warrant a lodestar adjustment, especially considering the discounts that are already taken into consideration. Here, Scott Douglass & McConnico LLP provided a discount to the client and one of the attorneys at Siebman Forrest Burg & Smith, LLP offered a discounted rate as well. No further adjustments are necessary.

18. Bar-Z has incurred $430,206.50 in reasonable and necessary attorneys' fees of Scott Douglass & McConnico LLP and $28,050.00 in reasonable and necessary attorneys' fees of Siebman, Forest, Burg and Smith, LLP.

19. Defendants' willful and malicious misappropriation was proven by clear and convincing evidence. Accordingly, the Court may award exemplary damages in an amount capped at two times the award for actual damages. TEX. CIV. PRAC. & REM. CODE § 134A.004(b). Given Rice and Patrick knew that their actions were violating

---

[3] The Court finds a discrepancy in the records that were submitted and the request by Bar-Z's counsel as to the appropriate amount of fees *Compare* (Dkt. #164, Exhibit 3 at p. 15) *with* (Dkt. #164, Exhibit 4 at p. 6). For the Scott Douglass & McConnico, LLP fees, the total amount discounted does not accurately reflect the amount of fees that were attributed to solely Dan Bitting and Cindy Saiter. In the records that were submitted, other attorneys of the firm were included on the invoices, but they were not included on the "total attorneys' fees" portion of the spreadsheet (Dkt. #164, Exhibit 3 at p. 175). The Court agrees with this calculation. However, the "reduced fees for all timekeepers" calculation seems to have included a discounted rate for all attorneys, not just Dan Bitting and Cindy Saiter, which is clear from looking at invoice #266498 *See* (Dkt. #164, Exhibit 3 at p. 111). Therefore, the actual amount of attorneys' fees are likely higher than the number submitted. However, because the Court cannot discern what the appropriate discount rate was for Dan Bitting and Cindy Saiter—given that the other invoices do not list the specific discount amounts for each attorney—the Court will keep the lower amount submitted. The Court finds that those fees are reasonable, provided that the total amount of attorneys' fees are likely higher.

      Patrick's Employment Agreement and still did it anyway, the Court is inclined to grant Bar-Z the full amount allowed.

20. Patrick's breaches of the Employment Agreement have and will continue to damage Bar-Z and have caused and will continue to cause irreparable harm to Bar-Z, for which Bar-Z has no adequate remedy at law.

## CONCLUSION

For the foregoing reasons, Plaintiff BarZ Adventures Inc. d/b/a Bar-Z Mobile Development is entitled to actual damages, injunctive relief, and exemplary damages against Defendants Timothy Patrick, App Star, LLC, and Eugene Rice. The Court will enter a Final Judgment consistent with the findings of this Memorandum Opinion and Order.

**IT IS SO ORDERED.**

**SIGNED this 3rd day of May, 2023.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE